## Chicago Terminal Transfer Company v. Mathias Helbreg, Administrator.

### Gen. No. 12,078.

1. CONTRIBUTORY NEGLIGENCE—*when driving across street behind train is*. Where a train of cars partially blocks a street in such way as to suggest that its position was likely to be changed at any moment, it is contributory negligence for a person to attempt to drive behind it when a slight backward movement would result in accident.

BAKER, J., dissenting.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Reversed, with finding of facts. Opinion filed December 22, 1905.

**Statement by the Court.** This is an action to recover for injuries resulting in the death of one Gottlieb Ziroch, who is alleged to have been killed October 13, 1898, in consequence of negligence of the appellant, at a point where appellant's line of railway crosses Western avenue in Cook county.

This is the second trial of the cause, a former judgment in plaintiff's favor having been reversed for reasons stated in an opinion reported in the 99 Ill. App., 563. The facts as they appeared in the former record are more fully detailed in the statement preceding that opinion than in the abstract filed at the present hearing. In the trial now before us for review the abstract shows that the defendant introduced no evidence except in relation to the age of the deceased who is said to have been 81 years old, apparently relying on appellee's evidence to sustain the contention that the decedent was not in the exercise of ordinary care and was the victim of his own contributory negligence.

There is evidence tending to show that in the afternoon

8

of the day of the accident a freight train operated by appellant entirely blocked the street crossing referred to. . While the blockade continued—from ten to fifteen minutes it is said—several wagons were driven up on either side of the railway, and the deceased approached the crossing from the north driving southward. Two teams were ahead of him, and driving up behind them he stopped his horse. Shortly afterward the freight train pulled ahead over the street crossing leaving the actual crossing temporarily clear and unobstructed. The two teams in front of the deceased at once drove over, the deceased moved up a little nearer to the crossing and a buggy was driven up alongside and east of his wagon. The train meanwhile backed up again and came it is said to a full stop with the rear end of its last car or "caboose" standing at about the center of the street crossing. Thereupon the buggy then standing alongside the wagon of the deceased was driven over the track and ahead of the deceased, who immediately followed about five feet it is said behind the buggy. When the horse and front wheels of the wagon driven by the deceased were upon the railway tracks, the train "surged back," the caboose or rear car striking the horse and wagon of the deceased, throwing the deceased and a companion into the ditch, inflicting injuries from which the intestate died a few hours later. Appellant's explanation of the so-called "surging" back is that it was caused by the running back of the "slack of the train" after the caboose had come to a stop.

The cause was submitted to a jury and a verdict returned assessing plaintiff's damages at $3,000. From this plaintiff remitted $2,000 and judgment was entered against defendant for $1,000.

JESSE B. BARTON, for appellant.

BORMAN & McGRATH, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.
It is contended in behalf of appellant that the decedent was not in the exercise of ordinary care in driving upon the

Chicago Terminal Transfer Co. v. Helbreg.

crossing at the time and in the manner shown by the undisputed evidence and that his administrator is not entitled therefore to recover.  The evidence tends to show that the train which when the deceased first drove up was entirely obstructing the crossing had gone ahead enough to clear the street, giving opportunity for the two teams ahead of the deceased to cross over; but that before the deceased and the witness Downey who was driving the buggy alongside and east of the wagon of the deceased could themselves cross, the rear end of the train came back again far enough to cover half of the street crossing.  In that position it came to a temporary standstill.  Downey in his buggy at once drove ahead behind the "caboose," succeeding in getting safely over, but the horse and wagon of the deceased who followed immediately behind Downey's buggy at a distance of about five feet, as appellee's attorneys state, were struck before the horse could get off the track.

Was it contributory negligence for the deceased thus to follow Downey?  While it is true the train had just come to a full stop, yet the rear end of the last car was covering half of the street.  Certainly its position was not such as to indicate it was likely to be left standing there obstructing half of a traveled street.  The reasonable inference would ordinarily be that the train had not been stopped half way over the crossing with the intention of holding it there in order that persons waiting on either side of the tracks at the crossing should have an opportunity to use only half of the street to cross over.  The position of the train in connection with the fact that it had been moving back and forth without reference to the crossing of teams, some of which had taken the chances and seized an opportunity to get over when the crossing was temporarily free because of the forward movement of the train, clearly shows, we think, that it was likely to move again any moment one way or the other. There was nothing to indicate that the switching back and forth was ended or even temporarily suspended, or to indicate in what direction the train would next move.  This the deceased probably knew or ought to have known and he

took the chances. What is said therefore in Chicago Junction Ry. v. McGrath, 107 Ill. App., 100–106, cited by appellee's attorneys is not in point under the facts. There was in the position of the train no invitation for Downey or the deceased to cross over immediately behind the rear car, where a slight motion backward might as it did strike the horse and wagon of the latter. In this respect the facts differ from those in C. & E. I. R. R. Co. v. Filler, 195 Ill., 9–13, cited by appellee's attorneys. It is said by the latter that the alleged position of the flagman standing quietly by talking with someone was an implied invitation to the deceased to cross. It is difficult to see the force of this reasoning, and Cunningham who was riding in the wagon with the deceased testifies he "could not see the flagman, the buggy being ahead of us." It does not appear that the deceased who was driving had any better opportunity to see the flagman. In C., M. & St. P. Ry. Co. v. Halsey, 133 Ill., 248–254, it is said that "one approaching a railroad crossing is bound to know that it is a place of danger" and he must give that attention that a man of ordinary caution under like circumstances would give. The fact that men take chances as some of those at the crossing with the deceased seem to have done did not relieve the deceased from the duty of exercising due care for his own safety. When it appears that the negligence of the deceased "concurred in producing the injury there can be no recovery." C. & A. R. R. Co. v. Williams, 87 Ill. App., 511–514.

The conclusion reached makes it unnecessary to consider whether appellant was guilty of negligence as charged. It was apparently blocking the street with entire disregard of the rights of the public in a way and for a time that seems to have been inexcusable. Whether it was guilty of negligence causing the injury is, however, another question under the evidence in this case.

For reasons stated we are of opinion the judgment of the Superior Court must be reversed with a finding of facts.

*Reversed with finding of facts.*

MR. JUSTICE BAKER dissenting.