### Chicago Terminal Transfer Railroad Company v. May Korando.

#### Gen. No. 12,761.

1. CONTRIBUTORY NEGLIGENCE—*when person seeking to cross tracks guilty of.* A person seeking to cross tracks knowing that cars standing thereon are likely to be moved at any time, is guilty of contributory negligence in taking a position so close to a car that she could not avoid injury if it was suddenly moved.

2. CROSSING—*when absence of gates not material.* A person injured upon railroad tracks can predicate no right to recover upon the absence of gates at a crossing, where she has reached the place of the accident by going upon such tracks at a place where there was no street crossing, and walking upon such tracks until she reached the place of the accident.

3. PHYSICAL EXHIBIT—*when admission of, improper.* A rent or torn garment claimed to have become so conditioned by virtue of an accident should not be admitted without preliminary proof

CHICAGO—FIRST DISTRICT—A. D. 1906.  621

Chicago Term. Trans. R. R. Co. v. Korando.

that its condition was the same at the time of the offer as it was immediately following the accident.

BAKER, J., dissenting.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Reversed, with finding of fact. Opinion filed November 23, 1906. Rehearing denied December 11, 1906.

**Statement by the Court.** Appellant owned, possessed and operated a railroad in Chicago, Cook county, running north and south between South Hoyne avenue on the east and South Oakley avenue on the west, Forty-seventh street on the north and Fifty-fifth street on the south, and consisting of several tracks.

Appellee on Sunday, October 18, 1903, between the hours of two and three o'clock in the afternoon, left her home on Fiftieth place just west of appellant's railroad tracks, and walked east on to the railroad right of way where it crosses Fiftieth place, having in her arms a baby and two pails in her hands. When on the railroad company's property she turned south and followed the railroad right of way along the railroad property until she came to Fifty-first street. When she started out a long train of cars was standing still, which blocked Fiftieth place and Fifty-first street and still blocked it when she reached Fifty-first street. The day was clear and the wind was blowing hard. Appellee crossed over a switch track which is west of the main track, going east. There were standing on the switch track a string of cars extending from the south sidewalk, and perhaps over a portion of the walk, south some distance. These cars were empty coal cars, and appellee stood either at the north end of these cars or just east of them, for a minute or two, and the cars moved back and struck her and knocked her down. According to her testimony she was standing just east of the cars and close

622    APPELLATE COURTS OF ILLINOIS.

VOL. 129.]    Chicago Term. Trans. R. R. Co. v. Korando.

to them for the purpose of protecting her baby from the wind, and after standing there a minute or two she turned and was going west to reach the shelter of a fence west of the switch track, and as she was passing the end of the car she was struck and knocked down. Her child fell between the switch track and the main track. Appellee claims that she herself fell between the rails of the track on which the empty coal cars had been standing, and was run over by these coal cars, the under parts of the cars injuring her.

According to the testimony of three witnesses who testified on behalf of appellee, she was standing at the end of the car when she was knocked down and she fell between the switch track and the main track east of it.

Appellee got up from where she was thrown to the ground, and when the cars were pulled away she went east of the main tracks and afterwards went to her home on Fiftieth place and then became unconscious, and since that claims to have suffered much pain, dizziness and other ailments. She was at the time twenty-three years of age and had lived at the same house on Fiftieth place most of her lifetime. She had crossed the tracks at Fifty-first street very many times and knew the use that was made of the switch track and the manner in which the cars were handled thereon. An engine would come down with more or less cars attached and leave them standing on the main track and then go down to the switch near Fifty-third street and back up on the switch track, pull off the empty cars and attach them to the cars left standing on the main track and move off. This was exactly what was done at the time of the accident, but it appears that the train of cars left standing on the main track was longer than ordinary.

The case was tried before the court and a jury, resulting in a verdict for appellee for $4,500. A motion

for a new trial was overruled and judgment was entered on the verdict.

JESSE B. BARTON, for appellant.

SIMON P. GARY, for appellee; L. M. ACKLEY, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

The testimony of appellee and of the witnesses on the part of appellee shows very clearly that nearly every day switching was done, and cars were moved from the switch track at Fifty-first street in the same manner in which it was done at the time of the accident, and that appellee had been familiar with that work and the manner in which it was done, for many years. Knowing that she could not at that time cross the main tracks she crossed the switch track, and either stood at the end of the empty car at the south side of Fifty-first street, as her witnesses testify, or, as she testifies, having stood just east of the car between the switch track and the main track, turned and was walking west past the end of the car to go to the shelter of a fence or building west of the switch track, when she was struck by the car. Appellee knew that these cars were to be moved, and that they might be moved at any moment. She also knew that the locomotive was at such a distance from her that she could not hear, under the conditions, its movements, or any signal that it might give. But she took no precaution against any movement of the cars whatever. She either stood so close to the car, or walked so close to it, that it was impossible for her to escape being struck by the car in case it moved toward the north from any cause.

The preponderance of the evidence, we think, shows that she was standing close to the end of the car in order to protect her child, which she was carrying

624 APPELLATE COURTS OF ILLINOIS.

VOL. 129.] Chicago Term. Trans. R. R. Co. v. Korando.

in her arms, from the high wind. Mrs. Katschke testified that appellee stopped to let the train go by, meaning the train on the main track, and while she was standing there the cars knocked her down and she was lying between the cars which knocked her down and the cars on the other track.

The witness Szymanski, called by appellee, testified that appellee was not under the cars but between the tracks; that when she was struck she was facing east. The witness Kaczowski, also called by appellee, said that appellee was standing on the sidewalk right at the end of the car when she was struck. Both of these witnesses heard the bumping of the cars as they were started.

These witnesses were disinterested and from their testimony and that of appellee it appears quite satisfactorily that appellee was standing close to the end or corner of the car facing east so that her child would be sheltered from the wind, not only by the car itself, but by her own body. If she was standing so close to the car, or if she was walking past the end of the car and so near to it that she could not avoid being struck by it if the car was moved toward the north, and having knowledge as she had of the customary manner of handling the cars at that place, appellee was not in the exercise of due care and caution for her own safety, which contributed to the injury received by her. Under such a state of facts appellee cannot recover. C., M. & St. P. Ry. Co. v. Halsey, 133 Ill. 248; L. S. & M. S. Ry. Co. v. Clemens, 5 Ill. App. 77; Thorsell v. Chicago C. Ry. Co., 82 Ill. App. 375; L. S. & M. S. Ry. Co. v. Hession, 150 Ill. 546; C. T. T. R. R. Co. v. Helbreg, 124 Ill. App. 113.

Appellee was asked on the trial, "Were there any gates?" meaning, as the record shows, were there any gates at Fifty-first street. The answer was "No, sir."

The presence or absence of gates at the crossing at the time of the injury to appellee was not material 'to the issue in this case for the obvious reason that appellee had come down the right of way of appellant from Fiftieth place to Fifty-first street, and reached the latter street where she would not have been compelled to pass through the gate if it had been there. She took a position inside of the place where the gate would properly be located, in a place of danger. The presence or absence of the gate therefore had nothing whatever to do' with the injury. This testimony, though not supported by any ordinance, introduced an element before the jury which tended to show an omission on the part of appellant of something which the jury might have understood it was required to do. It was error to admit the evidence.

In our opinion the court also erred in admitting appellee's wrapper in evidence without any proof that the garment had remained in the same condition at the time it was offered in evidence as it was immediately after the accident. The rents in the garment at the time it was put in evidence might have been made subsequently to the accident for all that the evidence shows. Its admission without preliminary proof as to its condition immediately after the accident was clearly erroneous.

For the reasons indicated the judgment is reversed with a finding of fact.

*Reversed with finding of fact.*

Mr. Justice BAKER dissenting.